UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

General Power Products, LLC,

    Plaintiff,

v.

MTD Products, Inc., *et al.*,

    Defendants.

Case No. 1:06-cv-143

Judge Michael H. Watson

## OPINION AND ORDER

This matter is before the Court upon Defendant MTD Products Inc.'s ("MTD") Motion to Direct Arbitration and Dismiss Action (Doc. 12). MTD's Motion was the subject of oral argument on March 29, 2006. (Doc. 47)

### I. Factual Background

This case was removed by Defendant Zongshen from the Clermont County Court of Common Pleas. (Doc. 1) This Court has determined that it has jurisdiction over this matter pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 203. (See Doc. 7)

GPP is engaged in engineering, designing, manufacturing, and distributing engines and utility equipment to the outdoor power industry. (Doc. 2, ¶ 2) MTD is engaged in the business of designing and manufacturing outdoor power equipment. (Id. ¶ 3) Zongshen is a Chinese company that manufactures engines for a variety of equipment, including outdoor power equipment. (Id. ¶ 4)

On March 12, 2004, GPP and Zongshen entered into an agreement whereby GPP agreed to improve Zongshen's engines in exchange for GPP's exclusive right to

import, distribute, and sell the improved engines in North America and Europe for a period of ten years. (Id. ¶ 8) The agreement, entitled "The Memorandum for Cooperation" ("Memorandum") includes the following provision:

> The Parties shall negotiate in good faith and attempt to resolve disputes arising in the performance of the Memorandum. If the Parties are unable to resolve a dispute hereunder, any Party can submit to arbitration to the International Chamber of Commerce, Singapore, and the dispute will be resolved in accordance with the International Arbitration Rules. . . .

(Id., Ex. 1)

GPP alleges that after it began work improving the engines, GPP met with MTD, and MTD asked GPP to design a specific and specialized Zongshen engine for MTD's outdoor power products. (Id. ¶ 16) GPP alleges further that before finalizing a purchase contract, MTD representatives told Zongshen that MTD wanted to purchase the engines directly from Zongshen instead of through GPP. (Id. ¶¶ 23-25) In a letter dated October 15, 2004, Zongshen informed GPP that MTD has stated that MTD "neither welcomed nor accepted" GPP's services and GPP had provided incomplete and inaccurate information to Zongshen. (Id., Ex. 4) Zongshen also stated that it was concerned that if it continued with GPP, it would "lose an important customer like MTD." (Id.) On October 27, 2004, Zongshen terminated the agreement between GPP and Zongshen. (Id. ¶ 33) GPP alleges that Zongshen is currently manufacturing and shipping engines with GPP's improvements to MTD. (Id. ¶ 36)

GPP's claims against MTD are: (1) tortious interference with a business relationship and contract; (2) trade secret misappropriation; (3) unfair competition; (4) and unjust enrichment. GPP has also filed a Second Amended Motion for Preliminary Injunction. (Doc. 35) GPP seeks to enjoin MTD from (1) selling Zongshen engines that

contain GPP's trade secrets and confidential information; and (2) destroying GPP's customer relationship with Zongshen.

Before this case was removed, the state court ordered GPP to join Zongshen as a necessary party pursuant to Ohio Rule of Civil Procedure 19(A)(2).[1] (Doc. 6, State Court Ex. 55) The state court was persuaded that Zongshen was a necessary party because in its Amended Motion for Injunctive Relief, GPP requested an injunction prohibiting MTD from shipping and selling engines from Zongshen that contain GPP's trade secrets. The court stated: "Clearly this relief envisions disrupting the business relationship between MTD and Zongshen, and would more than likely affect contract rights bargained for by both parties." The court explained that the relief sought by GPP would have a substantial effect on the rights to deal with MTD. The court explained further that:

> [C]onsidering that Zongshen is a party to the contract on which GPP's claim for relief is based, and is allegedly participating in a relationship with MTD which affects a breach of that contract, Zongshen is clearly "integrally involved" with both MTD and GPP as that phrase was used in the cases cited above.

GPP's claim against Zongshen is a "Notice to State Any Interest [Zongshen] May Have in the Requested Injunctive Relief." (Id. ¶ 66) GPP states that Zongshen "is a party to state any interest it may have in GPP's motion to enjoin MTD from selling GPP

---

[1]The Rule provides:

(A) Persons to be joined if feasible

A person who is subject to service of process shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest . . .

improved [Zongshen] engines in the U.S." (Id. ¶ 1) The only relief specifically sought from Zongshen is that Zongshen "come forward and state any interest that [Zongshen] may have in GPP's motion for a preliminary and permanent injunction enjoining MTD from selling GPP improved [Zongshen] engines in the U.S."

## II. Discussion

First, MTD argues that it has standing to seek an order to enforce the arbitration agreement in the Memorandum between GPP and Zongshen even though it is not a signatory to the agreement. Second, MTD argues that several provisions in the Memorandum need to be interpreted to determine whether GPP is entitled to relief against MTD.

The Court disagrees. Even if MTD has standing to enforce the arbitration agreement under this Court's decision in *Orcutt v. Kettering Radiologists, Inc.*, 199 F.Supp.2d 746 (S.D.Ohio 2002), the Court finds that GPP and Zongshen did not agree to arbitrate GPP's claims against MTD.

### A. Standing

MTD argues that although it is a non-signatory to the Memorandum, it may compel GPP to arbitrate under an equitable estoppel theory.

As this Court explained in *Orcutt*, several courts have adopted the approach of the Eleventh Circuit:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims

> "arise[ ] out of and relate [ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ··· when the signatory [to the contract containing the arbitration clause] raises allegations of ··· substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

199 F.Supp.2d 746, 752, quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citations omitted). The Court finds that the first set of circumstances is present here because GPP's claims make reference to the Memorandum. The Memorandum is an attachment to GPP's Amended Complaint. (Doc. 2, Ex. 1) GPP specifically makes reference to the Memorandum in its claim for tortious interference with business relationship and contract: "ZS and GPP had an exclusive distributor/marketer agreement and business relationship." (Id. ¶ 39)[2] GPP also refers to the Memorandum in its claim for trade secret misappropriation: "MTD's intentional, willful, and malicious interference with GPP's exclusive distributor relationship and agreement with ZS and ZS's termination of distribution agreement without just cause has resulted in the unauthorized disclosure and use of GPP's trade secrets." (Id. ¶ 52) Both the claim for unfair competition and unjust enrichment incorporate the preceding averments by reference. (Id. 56, 60) Therefore, the Court finds that MTD has standing to compel arbitration under the Memorandum.[3]

---

[2] The parties and several of the documents entered into the record refer to Defendant Zongshen as "ZS."

[3] The Court does not make this finding without reservation. While the Eleventh Circuit's approach has been widely adopted, the Sixth Circuit has yet to specifically adopt the theory that equitable estoppel permits a non-signatory to compel arbitration. *But see Arnold v. Arnold Corp.-Printed Communications For Business*, 920 F.2d 1269, 1281 (6th Cir. 1990) (adopting approach that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles); *Javitch v.*

## B. Arbitrability

In determining whether the parties agreed to arbitrate their dispute, this Court is to use the federal substantive law of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).[4] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* However, the Supreme Court has made it clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002), quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); see also *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ( "[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties"). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*,

---

*First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (recognizing that five theories for binding nonsignatories to arbitration agreements have been recognized, including estoppel, but remanding to district court for further consideration of the issue of estoppel under the facts of the case).

Moreover, the Court notes that the Eleventh Circuit's language is very broad, no doubt evincing the federal policy favoring arbitration. However, the facts of this case are distinguishable from those cases finding standing. For instance, GPP has not alleged that there was a conspiracy between MTD and Zongshen, nor has GPP alleged that MTD was acting as Zongshen's agent. In other words, the claims against MTD appear to be much less "dependant on" or "intertwined with" the agreement between GPP and Zongshen than the cases cited by MTD and reviewed by the Court. See, e.g., *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528-29 (5th Cir. 2000) (finding equitable estoppel is applicable where plaintiffs relied on the terms of an agreement containing an arbitration clause and a signatory non-defendant was charged with interdependent and concerted misconduct with a non-signatory defendant).

[4]Under 9 U.S.C. § 208, the Federal Arbitration Act ("FAA") applies to actions brought under the Convention on the Recognition and Enforcement of Foreign Arbitrable Awards to the extent that the FAA is not in conflict with the Convention. Therefore, the Court will rely on caselaw interpreting the FAA.

315 F.3d 619, 624 (6th Cir. 2003).[5]

The Court finds that the scope of the arbitration clause in the Memorandum is too narrow to encompass GPP's claims against MTD. "Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The arbitration agreement in the Memorandum provides: "[i]f the Parties are unable to resolve a dispute hereunder, any Party can submit to arbitration . . . " The Court finds that the phrase "a dispute hereunder" indicates that the parties agreed to arbitrate disputes regarding the interpretation of the contract itself. *See Associated Indem. Corp. v. Home Ins. Co.*, 1994 WL 59001, *2 (6th Cir. Feb. 25,1994) (unpublished) (arbitration clause containing language "as a condition precedent to any right of action hereunder" provides for the arbitration of disagreements only in interpretation of the contract itself). This interpretation is supported by the phrase in the preceding sentence that the parties are to first negotiate and "attempt to resolve disputes arising *in* the performance of the Memorandum." This language narrows the types of disputes which are contemplated by the arbitration agreement, and is in contrast to broad language such as "any dispute

---

[5] Neither party has argued that the arbitration clause is not valid. However, GPP has alleged that Zongshen has terminated the Memorandum between GPP and Zongshen. (Doc. 2, ¶ 33) "Although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated." *Aspero v. Shearson American Exp., Inc.*, 768 F.2d 106, 108 (6th Cir.), *cert. denied*, 474 U.S. 1026 (1985). The Supreme Court has held that disputes that arise under a contract prior to its expiration are subject to the arbitration clause contained within the contract. *Nolde Brothers, Inc. v. Local No. 358 Bakery and Confectionery Workers Union*, 430 U.S. 243, 251 (1977). On the other hand, a claim brought after the expiration of a contract is found to "arise under a contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Financial Printing Division, Inc. v. NLRB*, 501 U.S. 190, 205-206 (1991). The Court finds that GPP's claim is brought after the expiration of the Memorandum, but it involves facts and occurrences that arose before expiration.

arising out of or relating to." See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (labeling as "broad" a clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (stating that arbitration clause requiring arbitration of any dispute arising out of an agreement is "extremely broad.")

GPP's claims against MTD are (1) tortious interference with contract; (2) trade secret misappropriation; (3) unfair competition; (4) and unjust enrichment. None of these claims require the interpretation of the Memorandum.

Under Ohio law, to establish a claim of tortious interference with contract, the plaintiff must demonstrate: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) the alleged wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. *Power Marketing Direct Co. v. Ball*, No. 05-4149, 2006 WL 3390373, at * 2 (6th Cir. Nov. 22, 2006)(citing *Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999)); *see also Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995)(syllabus ¶ 2). The Second and Ninth Circuits have held that the phrases "any dispute or difference [arising] under this Charter" and "arising hereunder" are not broad enough to reach claims of fraudulent inducement. *In re Kinoshita & Co.*, 287 F.2d 951, 952 (2d Cir. 1961); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *see also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 & n.5 (6th Cir. 2003) (acknowledging the holdings of these two courts). This Court holds the same. While the existence of the Memorandum and even

the breach of the Memorandum may form the factual basis for GPP's tortious interference claim, the Court notes that it is not necessary for GPP to prove a breach of the Memorandum in order to sustain the claim. As the Sixth Circuit has explained, "the determination that a claim 'require[s] reference' to an arbitrable issue or factual dispute is not determinative." Simon v. Pfizer Inc., 398 F.3d 765, 776 (6th Cir. 2005), quoting, Bratt Enters., Inc., v. Noble Int'l Ltd., 338 F.3d 609, 613 (6th Cir. 2003).

Plaintiff has also brought claims of trade secret misappropriation and unfair competition. The Uniform Trade Secrets Act, as enacted by Ohio, defines "misappropriation" as any of the following:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
>
> (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
>
>> (a) Used improper means to acquire knowledge of the trade secret;
>>
>> (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
>>
>> (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ohio Rev. Code § 1333.61(B). Similarly, unfair competition is defined as "an express or implied representation that the goods or business of one man are the goods or business of another." Henry Gehring Co. v. McCue, 154 N.E. 171, 172 (Ohio Ct. App. 1926). The Court recognizes that Sections 1.1.2 and 3.4 govern ownership of

intellectual property, but the Court finds that GPP's trade secret and unfair competition claims are not dependent on an interpretation of these clauses. Section 1.1.2 merely provides that "[t]he intellectual property resulting from the Improvements of ZS Products and Certificates shall be owned by ZS and GPP jointly." Section 3.4 states that in the event that the Memorandum is terminated because of GPP's breach, Zongshen shall have the right to purchase GPP's interest in the intellectual property. Since there is no indication from the parties that this purchase has occurred, the second sentence of Section 3.4 is applicable: "If ZS does not purchase GPP's interest in the intellectual property of the technical results of the Improvements of ZS Products, GPP shall retain its interest in the intellectual property of the technical results of the Improvements of ZS Products . . ."

GPP's final claim is for unjust enrichment. Clearly, this claim cannot require interpretation of the Memorandum because unjust enrichment is based upon an implied contract. *See City of Cincinnati v. Cincinnati Reds*, 483 N.E.2d 1181, 1185 (Ohio Ct. App. 1984) (in a claim for unjust enrichment or breach of a quasi-contract, the law indulges in the fiction of a contract implied in law).

### III. Disposition

Based on the foregoing, it is hereby ordered that Defendant MTD's Motion to Direct Arbitration (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

_____
**Michael H. Watson, Judge
United States District Court**